**In the Matter of the Trust ESTATE of Robert L. KELSAY, Deceased.**

**No. 50174.**

Court of Appeals of Oklahoma,
Division No. 1.

Jan. 18, 1978.

Rehearing Denied March 28, 1978.

Approved for Publication by the Supreme
Court May 17, 1978.

James F. Davis, Lynn O. Holloman, Oklahoma City, for appellant.

Lytle, Soule & Emery by William D. Curlee, Oklahoma City, for appellees.

ROMANG, Judge:

The Widow-Beneficiary of the will of the deceased filed this action seeking a declaratory judgment interpreting certain provisions of the deceased's will. The action was filed against the Trustee of two testamentary trusts and certain contingent beneficiaries of the will. The Trustee took a neutral view and the contingent beneficiaries filed a counter-claim for a declaratory judgment.

The dispute involves the proper interpretation of the following provisions of the will:

## Article III

One-half of my estate, based on values finally accepted for Federal Estate Tax purposes, I give, devise and bequeath to The Liberty National Bank and Trust Company, a corporation, in trust for my wife, Marian E. Kelsay, such trust hereinafter referred to as Trust A upon trust for her and upon the terms and conditions as hereinafter provided, and subject to her power of appointment by her will; and

The other one-half of my estate, based on values as aforesaid, I give, devise and bequeath to the same Trustee, The Liberty National Bank and Trust Company, a corporation, in trust for my son, W. Charles Kelsay, upon trust for him and upon the terms and conditions hereinafter provided, hereinafter designated Trust B.

## Article IV

My Trustee shall allocate to each Trust properties and assets of my estate so as to as near as practicable equalize the income to each.

## Article VI

Trust A shall cease and terminate upon the death of my said wife, Marian E. Kelsay, and the remaining assets thereof and therein shall be set over, paid, delivered and vested in such persons, firms or corporations as she may appoint in and by her last will and testament.

## ·Article VII

In the event my wife, Marian E. Kelsay, should survive my son, W. Charles Kelsay, Trust B shall terminate upon the death of my said son, W. Charles Kelsay, and all remaining assets thereof shall continue in Trust for my said wife and be combined with and become a part of the single remaining Trust A, which shall finally terminate upon the death of my said wife, and upon the death of my wife in such event I give, devise and bequeath all remaining assets and property of such trust estate and the same shall be paid over to and distributed to A. C. Ferguson, should he be then living, or if he be then deceased, to his children, Alvin Charles Ferguson and Nina Kennedy, in equal interests, share and share alike.

## Article VIII

In the event my wife should predecease my son, W. Charles Kelsay, then Trust B hereunder shall terminate upon the death of my said son and the remaining assets and property thereof shall be distributed as provided in Article VII hereof to the same ultimate beneficiary, or beneficiaries, therein name.

As matters developed the deceased's son, W. Charles Kelsay, predeceased the Widow. This contingency triggered Article VII whereunder Trust B is terminated and its "remaining assets . . . [are] combined with and become a part of the single remaining Trust A . . . ." The dispute arises over the apparent conflict between Article III, which grants to the Widow a power of appointment over the assets of Trust A remaining on the Widow's death, and Article VII, which provides that in the event the Son predeceases the Widow and the assets of Trust B are combined with Trust A then the "remaining assets" of new Trust A are to go to the contingent benefi-

ciaries on the Widow's death. The question is whether the power of appointment over Trust A granted in Article III is modified under the contingencies mentioned in Article VII. The District Court held that Article III was modified in the case the Article VII contingencies occurred and found that it was the testator's intent that:

"In the event that [the Widow] . . . survived [the Son] . . ., which has occurred, [the Widow] . . . was to receive the net income of Trusts A and B combined for her life, and in such event all assets and property remaining in the entire trust estate at the time of her death were to be distributed to [the contingent beneficiaries] . . . free of trust."

The Appellant-Widow attacks this finding primarily on the ground that it does not reflect the testator's intent in that it threatens the marital deduction for federal income tax purposes which, as found by the District Court in his oral remarks when rendering his judgment but was not included in the findings contained in the Journal Entry, was a matter of great concern to the testator.

■ The parties agree that in interpreting a will the intention of the testator, if legal, is paramount. 84 O.S.1971, § 151. Additionally, the Widow urges the rule that where a clear and distinct devise or bequest is made in one section (Article III's power of appointment it cannot be taken away by other less certain parts of the will (Article VII). It is to be noted that this statutory rule depends on the words modifying a clear devise or bequest being less "clear and distinct." 84 O.S.1971, § 156. The Contingent Beneficiaries urge the rule that where two parts of a will are inconsistent that the latter in position shall govern. 84 O.S.1971, § 155. But this rule depends on a finding that the provisions are irreconcilable. Overriding all rules of interpretation is the injunction for courts to seek out and give effect to the testator's intent.

■ The parties agree that if the Widow has no power of appointment the federal marital deduction is jeopardized. We find

the fact that the statute of limitations for a federal audit has passed is irrelevant. The question is the intent at the time of death. It is no consolation that a result now, possibly at variance with the testator's intent, would not be as detrimental as that same result would have been earlier.

■ If we are conclusively guided by a supposed intent to secure what many believe to be the most favorable federal estate tax treatment, then the testator's intent on the issue is important. In assessing the District Court's judgment we are guided by the injunction that its interpretation should be upheld on appeal so long as it is not against the clear weight of the evidence. *Savage v. Hill*, 346 P.2d 323 (Okl.1959).

The parties fully and very professionally briefed the question of the status of remarks of a trial judge which are not consistent with or included in his written findings. While the extensive briefing has been very helpful to the Court we need not enter fully upon the question to dispose of the issue.

■ We think the record only weakly supports the conclusion that the marital deduction was paramount in the mind of the testator. Indeed, the District Court's oral remarks only suggest that it was a matter of great (not necessarily paramount) concern. Of at least equal (but not necessarily inconsistent) importance was the testator's concern for his Widow and Son. Be that as it may, it is not unreasonable for the District Court to conclude that a reasonably prudent testator of deceased's means would obviously desire to pass on to his surviving family the maximum that he can protect from the tax authorities. Those who suggest the contrary would have the burden of proving a different intention.

The District Court's omission in excluding such a finding from the written journal entry can hardly be characterized as inadvertent. The parties could not agree to a journal entry and a hearing was held over the two different versions. The Widow's version, which contained the oral remark, was not adopted by the District Court. We

must conclude that the District Court specifically rejected his earlier remark and chose not to elevate it to a formal finding. But even so, the remark is not factually inconsistent with the written journal entry (although it might arguably undermine the legal conclusion) and it is a conclusion we find reasonable and probable on the record and as a matter of common experience.

We must conclude that the District Court's conclusion is at variance with the need to protect the marital deduction and that the marital deduction was an important concern of the testator. But so concluding, we are faced with language that we find hard to reconcile. A testator's intent is to be found in the instrument if possible, 84 O.S.1971, § 152, and under the guise of interpretation a court cannot ignore clear language. We find no ambiguity in Article VII which clearly expresses an intention to merge the trusts if the son predeceases the Widow and distribute the assets remaining in the, now single, trust to the contingent beneficiaries on the Widow's death. The interpretations offered by the Widow, while reasonable in the abstract, force us to strain the language beyond its normal usage. While the testator may have desired the most favorable tax treatment of the marital deduction, the language chosen fails to effectuate that intent. Not being able to reconcile Articles III and VII without ignoring the clear import of the words, we must follow the statutory injunction in 84 O.S.1971, § 155 and follow Article VII, the latter in position. Since this reaches the same result as the District Court, its judgment is affirmed.

AFFIRMED.

BOX, P. J., and REYNOLDS, J., concur.